UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT CROCKER JACOBS,<br><br>    Plaintiff,<br><br>    v.<br><br>LIBERTY SURPLUS INSURANCE CORPORATION,<br><br>    Defendant. | Case No. 3:21-cv-01687-WHO<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 28 |

Plaintiff Scott Jacobs was the trustee for, and a beneficiary of, a trust. He purchased a professional liability insurance policy from defendant Liberty Surplus Insurance Corporation ("Liberty"). Other beneficiaries sued Jacobs in state court; they alleged that he abused his position as trustee and sought, among other things, penalties and his removal. Jacobs eventually paid a settlement and attorney's fees. He alleges that Liberty was obligated to defend him against suit and pay the costs; its failure to do so, he claims, breached the contract and violated the covenant of good faith and fair dealing. Liberty moves to dismiss because, it argues, the policy did not obligate it to do either. The motion is denied. Liberty's arguments for why the Policy does not, on its face, cover the suit are mostly unpersuasive. One argument, about whether any exclusions apply, may persuade later, but the dispute is not sufficiently developed to resolve on the pleadings and briefing to date. Dismissal is not warranted on that basis now.

**BACKGROUND**

Jacobs, a citizen of California, is and was the trustee of a trust for Justin Jacobs, Jr. (the "Trust"). Complaint ("Compl.") [Dkt. No. 1] ¶ 1. Liberty is alleged to maintain its principal place of business in Massachusetts or New Hampshire. *Id.* ¶ 2. It issued a professional liability insurance policy to Jacobs (through a now-dismissed defendant, *see* Dkt. No. 35) that covered

December 27, 2017, to December 27, 2018. Compl. ¶ 9; *see also* Dkt. No. 28-2 at 58–76 ("Policy").[1]

As a general matter, the Policy provided,

> The Company will pay on behalf of the **Insured** all sums in excess of the Deductible amount stated in the Declarations which the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** resulting from **Claims** first made against the **Insured** during the **Policy Period**, or **Extended Reporting Period**, if applicable, as a result of a **Wrongful Act** by the **Insured** or any **Entity** for whom the Insured is legally liable, provided that:
>
> > (1) such **Wrongful Act** was committed on or after the **Retroactive Date** and before the end of the **Policy Period**; and
> >
> > (2) prior to the **Knowledge Date** stated in the Declarations of this Policy, the **Insured** did not know or could not have reasonably expected that such **Wrongful Act** might give rise to a **Claim**.

Policy at 61. It also provided that Liberty "has the sole right to appoint defense counsel and the right and duty to defend any **Claim** made against the **Insured**." *Id.* It said that, "[t]he **Insured** shall not admit or assume liability for any **Wrongful Act**, or settle any **Claim**, or incur any expenses, including **Claims Expenses**, without the written consent of the Company." *Id.*

It defined a "Claim" to mean "receipt of a civil action, suit, proceeding, written monetary demand or written demand naming the **Insured** seeking **Damages** and / or **Professional Services** and/or nonmonetary relief including an injunction arising out of a **Wrongful Act** by the **Insured** or any **Entity** for whom the **Insured** is **legally** liable." *Id.* at 63. "Claims expenses" was defined to include "[r]easonable and necessary fees charged by an attorney(s) designated by the Company, or designated by the **Insured** with the Company's written consent, to defend a **Claim**." *Id.* "Damages" was defined as "a compensatory monetary amount for which the **Insured** may be held legally liable, including judgments (inclusive of any pre- or post-judgment interest), awards, or settlements negotiated with the approval of the Company." *Id.* A "Wrongful Act" was defined as "any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach

---

[1] The unopposed request for judicial notice of the Policy (Dkt. No. 28-1) is GRANTED. *See Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005). The bolding from the original document is preserved in this Background section but is omitted in the Discussion section below unless otherwise noted.

of duty, or **Personal Injury** in the rendering of or failure to render **Professional Services**." *Id.* at 66. "Professional Services," in turn were "those services specified in Item 7 of the Declarations which are provided by the **Insured** to a third party for a monetary fee; or as otherwise defined by endorsement to this Policy." *Id.* at 65. Finally, the Policy had various exclusions; those that Liberty argues are relevant are discussed below.

On October 31, 2018, a beneficiary of the Trust, Garret Winston Jacobs, filed a petition to remove Jacobs as trustee, compel an accounting, appoint a successor trustee, and for attorney's fees in Santa Clara Superior Court (the "Petition"). Compl. ¶ 12; *see also* Dkt. No. 28-2 at 2–57 ("Pet.").[2] It was captioned "*In the Matter of Justin Jacobs, Jr., Trust Dated June 7, 2013*." Pet. at 2. As a general matter, it sought removal of Jacobs as a trustee for alleged breaches of his fiduciary duties. *See id.* at 3, 5–11. It also sought for Jacobs to be "personally liable" or liable "in his individual capacity" for beneficiary costs and attorney's fees associated with the petition. *Id.* at 13, 14.

Jacobs alleges that he timely tendered the Petition to Liberty, which acknowledged receipt and opened a file. Compl. ¶ 14. But Liberty did not defend him against the Petition. He paid for his own defense. *Id.* ¶ 15. He claims that he kept Liberty informed of developments in the litigation and that Liberty requested updates. *Id.* According to him, it "never objected to any of the work defense counsel performed" or to "defense counsel's rates or any fees or costs plaintiff incurred defending against the Petition." *Id.* The litigation settled in January 2020. *Id.* Jacobs alleges that "$400,000 was paid to Garrett Winston Jacobs, to his attorneys, and to attorneys representing [another beneficiary]." *Id.* Jacobs claims that the fees and costs "exceeded $300,000." *Id.* He demanded that Liberty reimburse him for attorney's fees and settlement expenditures; Liberty denied the coverage in May 2020. *Id.* ¶ 16.

Jacobs filed suit in this court in March 2021, alleging breach of contract; violation of the covenant of good faith and fair dealing; negligence; and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. After the parties stipulated to

---

[2] The unopposed request for judicial notice of the Petition (Dkt. No. 28-1) is GRANTED. *See Knievel*, 393 F.3d at 1076–77.

3

1   extending the time to respond, Liberty moved to dismiss in July 2021.  *See* Motion to Dismiss
2   ("Mot.") [Dkt. No. 28].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  There must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment."  *See Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

## DISCUSSION

Liberty moves to dismiss all claims because, it argues, the Policy did not require it to

defend Jacobs against the Petition. *See generally* Mot.[3]

## I. BREACH OF CONTRACT

The first claim alleges that Liberty breached its contractual commitments under the Policy by failing to defend against the Petition and indemnify Jacobs. *See* Compl. ¶¶ 17–33.

"Interpretation of a contract is a matter of law." *Beck Park Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 695 F.2d 366, 369 (9th Cir. 1982). The correct interpretation is the one that gives effect to the "mutual intention" of the parties. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995), *as modified on denial of reh'g* (Oct. 26, 1995) (citing Cal. Civ. Code § 1636). The starting point for this analysis is always the language of contract itself. *Id.* "A written contract must be read as a whole and every part interpreted with reference to the whole, with preference given to reasonable interpretations." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1170 (9th Cir. 2015). "An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." *Id.* at 1171 (internal quotation marks omitted). "Interpretation of a contract must be fair and reasonable, not leading to absurd conclusions." *ASP Properties Grp., L.P. v. Fard, Inc.*, 133 Cal. App. 4th 1257, 1269 (2005) (internal quotation marks omitted).

Particular rules apply when interpreting insurance policies. "[I]nsurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003), *as modified on denial of reh'g* (Sept. 17, 2003) (internal quotation marks and citation omitted). Insurance provisions should be given their "clear and explicit meaning" in their "ordinary and popular sense" unless given a special meaning by the parties. *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990). "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *Id.* Usually, ambiguity is "resolve[d] . . . in favor of coverage." *Id.* Absent a special reason not to,

---

[3] Jacobs requests dismissal of the negligence and UCL claims. *See* Dkt. No. 30 at 27. Accordingly, claims three and four are DISMISSED WITHOUT PREJUDICE. *See* Fed. R. Civ. P. 41(a)(2).

interpretation should "protect[] the objectively reasonable expectations of the insured." *Id.*

### A. Whether the Petition Was a "Claim"

First, Liberty argues that it had no duty to defend or indemnify because the Petition is not a "claim" as required by the Policy. *See* Mot. 7–9. The Policy applies to "Claims" and defines a "Claim" as "receipt of a civil action, suit, proceeding, written monetary demand or written demand naming the Insured seeking Damages and / or Professional Services and/or nonmonetary relief including an injunction arising out of a Wrongful Act by the Insured or any Entity for whom the Insured is legally liable." Policy at 63. According to Liberty, Jacobs must have been "named" in the document; the Petition was against the Trust, not Jacobs, and so it does not qualify. *Id.* 7. Relatedly, Liberty argues that the Petition was not "made against the Insured." *Id.* 8.

Jacobs replies that he was "named" as the Policy uses that term; that the Petition was "made against" him; or, at the very least, that the Policy is ambiguous and must be interpreted in his favor. *See* Opposition to the Mot. ("Oppo.") [Dkt. No. 30] 6–12. I agree that the Petition was included within the definition of "claim." The case was captioned as against the Trust, of which Jacobs was trustee, and sought costs and fees from him in his "individual capacity" and that he be held "personally liable." Pet. at 13–14. A reasonable insured, reading the Policy provision in context, would most naturally understand the plain language of the definition to cover this situation. *See AIU Ins.*, 51 Cal. 3d at 822 (holding that a layperson's understanding governs). If Jacobs were not properly before the Superior Court, the court could not impose liability or duties on him. *See, e.g.*, *Burnham v. Superior Ct. of California, Cty. of Marin*, 495 U.S. 604, 609 (1990) ("[T]he judgment of a court lacking personal jurisdiction violate[s] the Due Process Clause of the Fourteenth Amendment."). By naming the trust and seeking remedial action against Jacobs as trustee and individually, the Petition "nam[ed]" and was "made against" him. Indeed, under California law, "a trust is not a legal entity, it cannot sue or be sued, but rather legal proceedings are properly directed at the trustee." *Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 521 (2010) (internal quotation marks, alteration, and citations omitted). And, "[a]s a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." *Est. of Bowles*, 169 Cal. App. 4th 684, 691 (2008) (collecting authorities). Accordingly, a suit against this Trust

6

*was* a suit against Jacobs as trustee.

Liberty's definition, in contrast, would amount to "naming" becoming "formally naming in the caption," an unnatural understanding to a layperson. One court has examined this precise issue under California law, found that the term was ambiguous, and therefore interpreted it in the insured's favor. *See Interstate Fire & Cas. Co. v. United Nat'l Ins. Co.*, No. CIV 08-956 JEC/LFG, 2009 WL 10706996, at *6 (D.N.M. Sept. 22, 2009). Liberty has pointed to no case that took its cramped view of a materially similar term in a materially similar context.

Reading the Policy as Liberty urges would lead to absurd results. *See ASP Properties*, 133 Cal. App. 4th at 1269 (holding that absurd results signal an incorrect interpretation). It would allow the party that brings the underlying action to unilaterally decide whether the insured would receive coverage or not simply by choosing to name the trust rather than the trustee. Liberty, in fact, repeatedly emphasizes that these claims *may* name the trustee personally in the caption, but that this petitioner simply chose not to. *See, e.g.*, Mot. 8. Under Liberty's view, is it is up to the *opponent* of the trustee to decide whether he gets coverage. California law prizes protection of the insured, but this would mean that the *insurer's* duties rose and fell with the choice of the person bringing the complaint. Liberty's interpretation would lead to a related anomalous consequence: its duty to defend would turn on how the case was *captioned*, despite California law's clear command that a suit against the trust is in substance a suit against the trustee. *Greenspan*, 191 Cal. App. 4th at 521.

Liberty argues that being "named" in a suit has a specific legal meaning and that meaning should control here. *See* Mot. 7–8; Reply 3–5. There are several reasons why this argument is unconvincing. First is the unique nature of a trust and trustee. Even if Liberty were right that the legalistic definition of "naming" should prevail, Jacobs was effectively named under California law. This aside, Liberty's argument for using the hypertechnical definition of "naming" someone in a suit ignores that insurance policies are to be interpreted from the view of a reasonable consumer of insurance—the insured. *See AIU Ins.*, 51 Cal. 3d at 822. A reasonable insured would not parse the language like a lawyer. She would understand that when a suit is brought against the

7

trust and seeks redress against her personally, she has been named in an action.[4]

Next, Liberty argues that Jacobs's interpretation renders superfluous the language that a claim is an action "seeking Damages and / or Professional Services and/or nonmonetary relief including an injunction arising out of a Wrongful Act by the Insured" and "made against an Insured." Policy at 61, 63; *see* Mot. 8. Again, there are several reasons this is unpersuasive. First, there would still be redundancy in these phrases even on *Liberty's* interpretation. If "nam[ed]" meant "formally named in the caption," the phrases Liberty calls superfluous would still be there, performing the same functions as they do now. (The action would still be both "naming" and "against" the insured, for instance.) Still more, the phrases are not really superfluous in the way that the principle is used in contract interpretation. The rule against superfluity counsels that drafters would probably not say the same thing twice in different ways, placing a thumb on the scale against such an interpretation. *See Pauma*, 813 F.3d at 1171. But here, the dispute is not over two different operative phrases, the whole definition is meant to be read as one coherent provision. And finally, the other phrases are not all that superfluous even if they were thought to be as distinct as Liberty says: The "seek damages" phrase in context is meant to limit actions to those "arising out of Wrongful Act[s]."

Liberty relies on *King v. Johnston*, 178 Cal. App. 4th 1488 (2009), to argue that trustees may or may not be named in a suit. *See* Mot. 8. But that case simply confirms everything just said. It reiterates that "[a]s a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf." *King*, 178 Cal. App. 4th at 1500. Liberty characterizes the case as holding that "although it may not be necessary to do so, a trust beneficiary can bring a proceeding against a trustee for breach of trust." Mot. 8. The case, however, was contrasting that with a situation in which the beneficiary sued only a *third party*, not the *trust itself*. *King*, 178 Cal.

---

[4] In its Reply, Liberty argues that "[a]n insurer's obligation is to review the *actual pleadings* in conjunction with the express terms of the policy." Dkt. No. 33 at 2 (emphasis in original). And it contends that "while facts extrinsic to the pleadings may give rise to a duty to defend – or eliminate the potential for coverage – there is *no obligation* for an insurer to speculate as to claims or allegations that could have been, but were not actually asserted." *Id.* (emphasis in original). But this interpretation depends only on the Policy itself applied to the "actual pleading," which sought to hold Jacobs liable.

8

App. 4th at 1500–01.  The court went on to confirm the proper defendants in such a suit: "when the claim being asserted rests in whole or in part on alleged breaches of trust by the trustee, a beneficiary has standing to pursue such a claim against either (1) the trustee directly, (2) the trustee and third parties participating in or benefiting from his, her, or its breach of trust, or (3) such third parties alone."  *Id.*

Finally, Liberty attacks the straw man that Jacobs's interpretation "would require speculation as to every individual or entity that could possibly be named as a party in a proceeding, even if they may never be legally liable."  Reply ISO Mot. ("Reply") [Dkt. No. 33] 2.  That is incorrect.  The Petition expressly stated that it sought to hold Jacobs liable; no speculation was required.  Basic trust law, moreover, renders the trustee, not the trust, the real party in interest, putting insurers on more than adequate notice.

Accordingly, the Petition and its suit qualified as a "claim" under the Policy's definition.

### B. Whether Liberty Needed to Consent to the Settlement and Fees

Liberty next argues that, even if the Petition qualified as a claim, it was required to consent to the designation of Jacobs's counsel, the settlement, and fees and costs.[5]  *See* Mot. 9–11.  Liberty asserts that it never designated counsel to defend the suit and never approved the settlement or

---

[5] As noted above, the Policy has various requirements about Liberty's consent.  It provides that Liberty "has the sole right to appoint defense counsel and the right and duty to defend any Claim made against the Insured."  Policy at 61.  It provided that Jacobs "shall not admit or assume liability for any Wrongful Act, or settle any Claim, or incur any expenses, including Claims Expenses, without the written consent of the Company."  *Id.*  It said that Liberty "has the right to . . . conduct negotiations and, with the written consent of the Insured, effect settlement of any Claim as the Company deems reasonable."  *Id.*  Several other provisions were also tied to Liberty's approval in some way.  The definition of "Claims Expenses" included "[r]easonable and necessary fees charged by an attorney(s) designated by the Company, or designated by the Insured with the Company's written consent, to defend a Claim" *Id.* at 63.  And it included "[a]ll other fees, costs and charges, resulting from the investigation, adjustment, defense, and appeal of a Claim, if incurred by the Company, or by the Insured with the Company's written consent."  *Id.*  It provided that, "[t]he determination by the Company as to the reasonableness of Claims Expenses shall be conclusive on the Insured."  *Id.*  The Policy also limited the definition of "Damages" to include "a compensatory monetary amount for which the Insured may be held legally liable, including judgments (inclusive of any pre- or post-judgment interest), awards, or settlements negotiated with the approval of the Company."  *Id.*  It again stated that "[a]ll settlements must be negotiated and agreed upon with the prior written consent of the Company."  *Id.*

9

attorney's fees and costs. *Id.* Jacobs, in its view, never incurred any "Claims Expenses" because the settlement, fees, and costs do not fit into the definition in the Policy. *Id.*

California law has squarely rejected Liberty's argument, and for good reason. For the reasons explained above, Liberty's interpretation of "Claim" applied to the Petition is incorrect. It therefore allegedly wrongfully denied the claim and wrongfully did not defend the action. In those circumstances, it is settled that the insurer must then pay the settlement (if reasonable) if it is found to be in breach, regardless of whether it gave consent or not. *See Fuller-Austin Insulation Co. v. Highlands Ins. Co.*, 135 Cal. App. 4th 958, 984 (2006), *as modified on denial of reh'g* (Feb. 17, 2006) ("California law provides that a defending insurer must consent to a settlement in order for there to be coverage, but if an insurer erroneously denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement." (internal quotation marks omitted)); *Safeco Ins. Co. v. Superior Ct.*, 71 Cal. App. 4th 782, 787 (1999) (materially same); *Intergulf Dev. LLC v. Superior Ct.*, 183 Cal. App. 4th 16, 20 (2010) ("Breach of duty to defend also results in the insurer's forfeiture of the right to control defense of the action or settlement.").

The same applies to reasonable attorney's fees. *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553, 564 (1970) ("The cases which have considered apportionment of attorneys' fees upon the wrongful refusal of an insurer to defend an action against its insured generally have held that the insurer is liable for the total amount of the fees despite the fact that some of the damages recovered in the action against the insured were outside the coverage of the policy."); *see also Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 48 Cal. 2d 528, 539 (1957) ("Having defaulted such agreement the company is manifestly bound to reimburse its insured for the full amount of *any* obligation reasonably incurred by him." (emphasis added)). *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 660 (1958) ("An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for *all the detriment* caused by the insurer's breach of the express and implied obligations of the contract." (emphasis added)).

1    To hold otherwise would effectively immunize every insurer who wrongfully denied

2 defense and coverage:  The insurer could simply always deny the claim and not defend, then turn

3 around once its decision was found to be wrong and escape liability with the argument that its

4 consent was required in the suit in wrongfully chose not to defend.  Tellingly, Liberty cites no

5 authorities that have accepted its view, and it dropped the argument from its Reply.[6]

### C.  Whether Seeking Non-Monetary Remedies Removed the Duty to Defend

Liberty argues that because the Petition sought non-monetary remedies—removal of Jacobs as trustee, an accounting, enforcement of a settlement agreement, replacing the trustee, and attorney's fees—it does not fit into the definition of "Damages."  Mot. 12.  Its argument does not warrant dismissal.

"Damages," again, is defined as "a compensatory monetary amount for which the Insured may be held legally liable, including judgments (inclusive of any pre- or post-judgment interest), awards, or settlements negotiated with the approval of the Company."  Policy at 63.  And "Claims," to repeat, are "receipt of a civil action, suit, proceeding, written monetary demand or written demand naming the Insured seeking Damages and / or Professional Services and/or nonmonetary relief including an injunction arising out of a Wrongful Act by the Insured or any Entity for whom the Insured is legally liable."  *Id.*

To start, a request for damages is just a single type of claim; the plain text of the Policy also defines it to include a civil action "naming the Insured seeking . . . nonmonetary relief . . . arising out of a Wrongful Act by the Insured."  The Petition indisputably contained a claim for this type of relief in the form of removing Jacobs as a trustee.  And even if Liberty were correct that the Policy does not cover some remedies, California law is clear that "when the third party suit includes some claims that are potentially covered, and some that are clearly outside the policy's coverage, the law nonetheless implies the insurer's duty to defend the entire action."  *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 997–98 (2015).  This is not to say that the insurer must automatically bear the *costs* of defending the entire action, but it must nonetheless

---

[6] In light of this finding, Jacobs's alternate argument that Liberty waived the issue with its conduct need not be addressed.  *See* Oppo. 13–14.

11

*defend* the entire action. *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48–49 (1997).

### D. Whether an Exclusion or Endorsement Precludes Coverage

Liberty last relies on three exclusions and endorsements in the Policy to argue that it did not need to defend or cover. First, the Policy does not cover claims against Jacobs "for, based upon, or arising from any commingling, misappropriation or improper use of funds, accounts or property." Policy at 75. Second, it does not cover claims "for, based upon, or arising from any services by the Insured as an investment manager, investment/financial advisor, financial custodian, accountant or lawyer." *Id.* Third, it does not cover claims "for, based upon, or arising from the Insured's exercise of any discretionary authority with respect to any client's funds or accounts that is outside the specific scope of authority and power granted to the trustee in the Trust Documents." *Id.*

I cannot determine whether Liberty's arguments are correct at this time. The parties, especially Liberty, have not adequately briefed the proper scope or interpretation of the exclusions. The third exclusion, by its plain terms, appears to not apply because the wrongful acts described in the petition do not relate to discretionary authority beyond that granted as a trustee; they are all about Jacobs's performance as a trustee. Liberty may have more to its argument on the other two, but it devotes only a few short paragraphs in its Motion to them and does not substantively address the matter in its Reply. On the first exclusion, there is no allegation of commingling or misappropriation on the face of the Petition, so Liberty must rely on the "improper use" term. But the parties have presented no authority about what "improper use" means in this context. For instance, a well-known canon of interpretation teaches that, sometimes, a seemingly general item in a list is to be interpreted to only reach things akin to the other items. *See Mirpad, LLC v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058 (2005) (applying the principle to an insurance contract). If that canon controlled here, "improper use" should presumably be interpreted to mean improper use akin to commingling or misappropriation, not merely imprudent use or even use that fell below the relevant standard of care. But the parties offer no interpretive guidance. Similarly, on the second exclusion (about finance), while the Petition certainly concerns Jacobs's management of the trust's funds, the parties have presented no

1    authority about how broadly to read the exclusion.  Liberty appears to read it to cover any time

2    money is managed, but that would seem to vitiate the entire point of the Policy—management of

3    funds and property is a trustee's role—signaling it is perhaps incorrect.

4          For clarity, I am not finding that the scope of the exclusions is unclear or ambiguous.  The

5    parties have not developed their arguments enough to make a determination one way or the other.

6    And it may be that a more developed record will aid in analyzing the applicability of the

7    exclusions.  For now, I cannot find that Liberty is correct that the exclusions undoubtedly apply.

## II. COVENANT OF GOOD FAITH AND FAIR DEALING

9          Jacobs's second claim is for violation of the covenant of good faith and fair dealing.

10   Compl. ¶¶ 34–39.  Liberty moves to dismiss because, it argues, there is no coverage to begin with,

11   so the denial cannot have been in bad faith.  Mot. 14.  Even if there were coverage, it argues that

12   there is a genuine dispute about whether there was coverage, so its actions also cannot have been

13   in bad faith.  *Id.* 14–15.  Jacobs argues that a genuine dispute about coverage does not

14   automatically defeat a covenant of good faith and fair dealing claim.  *See* Oppo. 17–19

15         "The law implies in every contract, including insurance policies, a covenant of good faith

16   and fair dealing."  *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720 (2007), *as modified* (Dec.

17   19, 2007).  "When the insurer unreasonably and in bad faith withholds payment of the claim of its

18   insured, it is subject to liability in tort."  *Id.* (internal quotation marks and citations omitted).

19         The general rule is that, if there is a genuine dispute about the existence or extent of

20   insurance coverage, there can be no violation of the covenant of good faith and fair dealing,

21   because a genuine dispute means there was no bad faith.  *Wilson*, 42 Cal. 4th at 723.  Courts,

22   however, have split on whether this rule applies to the duty to defend against a third-party lawsuit.

23   *Compare, e.g.*, *Netscape Commc'ns Corp. v. St. Paul Mercury Ins. Co.*, No. C 06-00198 JW, 2010

24   WL 11627909, at *7 (N.D. Cal. Nov. 4, 2010) (holding the rule bars suit), *with Harbison v. Am.*

25   *Motorists Ins. Co.*, 636 F. Supp. 2d 1030, 1040 (E.D. Cal. 2009) (holding it does not).

26   California's judiciary has not resolved the issue, and much of the discussion on both sides has

27   been in dicta or has been due to assumption rather than reasoned decision.

28         For the reasons that follow, I agree with the line of cases that have held or suggested that a

1   genuine dispute over whether a third-party suit triggered a duty to defend does not automatically
2   defeat a bad-faith claim.  The most recent case that I or the parties have found from a court
3   empowered to authoritatively interpret California law is *Mt. Hawley Ins. Co. v. Lopez*, 215 Cal.
4   App. 4th 1385 (2013), *as modified* (May 29, 2013).  There, the Court of Appeal explained that
5   "[i]t is doubtful that the so-called 'genuine dispute doctrine' applies in third party duty to defend
6   cases like this one."  *Id.* at 1424 (footnote citations omitted).  But it said that in dictum by going
7   on to assume that it could be a defense and finding it not to be on the facts of that case.  *Id.*  I
8   nonetheless find this and related cases most persuasive.  The fundamental reason is that the duty to
9   defend is crucially different than other alleged breaches of contracts.  Under California insurance
10  law, insurers have the duty to defend even when there is a *potential* for indemnity.  *See Montrose*
11  *Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993).  If there is a *genuine* dispute about
12  whether a claim is covered, there is necessarily the potential—indeed, a realistic potential—for
13  indemnity.  Accordingly, when there is a genuine dispute about whether coverage extends to a
14  claim, the insurer is still obligated to defend first, then seek redress later if it believes it was
15  erroneous.  When an insurer sees a genuine dispute about the scope of coverage and chooses not to
16  defend, it has therefore failed to adhere to this law and a jury could find that it acted in bad faith,
17  based (as always) on the particular circumstances.
18          Courts that have come out the other way, even when not in dicta, have usually not given
19  reasoned explanations why their decisions are consonant with these principles.  One, though,
20  found that the Ninth Circuit had applied the doctrine to the duty to defend.  *See Gaylord v.*
21  *Nationwide Mut. Ins. Co.*, 776 F. Supp. 2d 1101, 1125 (E.D. Cal. 2011).  That case overread the
22  Ninth Circuit's decision.  The Ninth Circuit did *apply* the doctrine to bar a claim based on the duty
23  to defend.  *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994).  But it
24  gave no indication that it did so in the face of arguments that there is a particular rule applied to
25  the duty to defend, it only cited more general authorities.  *See id.*; *see also Lum v. City & Cty. of*
26  *Honolulu*, 963 F.2d 1167, 1170 (9th Cir. 1992), *as amended* (June 15, 1992) ("[C]ases which
27  stumble into decisions on questions neither raised nor discussed by the parties or by the trial court
28  are not treated as authoritative on those unstated assumptions and nonlitigated points.").  Even if

14

the Ninth Circuit had issued a holding on this question, California's courts have indicated several times in the intervening decades that California law is otherwise. *See Mt. Hawley*, 215 Cal. App. 4th at 1424; *Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 951 (2006), *as modified on denial of reh'g* (June 16, 2006).[7] The only argument Liberty offers is that bad faith cannot exist when there is a genuine dispute—the general rule. *See* Mot. 14–15. But, as explained, that rule is flipped on its head by the particular nature of the duty to defend.

## CONCLUSION

The motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: September 17, 2021

William H. Orrick
United States District Judge

---

[7] One California Court of Appeal decision drew a distinction between genuine disputes based on fact and law (which, though more limited, is still at odds with the cases coming out the other way). *See Delgado v. Interinsurance Exch. of the Auto. Club*, 61 Cal. Rptr. 3d 826, 843 (Ct. App.), *rev'd*, 47 Cal. 4th 302 (2009). The California Supreme Court reversed the decision (without addressing that aspect), held that the policy created no duty to defend, and the Court of Appeal issued a new decision without any discussion of this issue. *See Delgado v. Interinsurance Exch. of Auto. Club of S. California*, 47 Cal. 4th 302 (2009). In any case, the fact-law distinction is something no party presses here, that distinction is not one that *Mt. Hawley* (which came after these cases) discussed, and another district court found the statement to be said in dictum. *See Harbison*, 636 F. Supp. 2d at 1040.